William R. KRISKOVIC, Plaintiff,

v.

WAL–MART STORES, INC., a Delaware Corporation, Defendant.

No. 95–CV–138.

United States District Court, E.D. Wisconsin.

Dec. 17, 1996.

Victor E. Plantinga, Stupar & Schuster, Milwaukee, WI, for Plaintiff.

William J. Holloway, Alicia C. Schneider, Hinshaw & Culbertson, Chicago, IL, Jeffrey J. Liotta, Hinshaw & Culbertson, Appleton, WI, for Defendant.

## DECISION AND ORDER

RANDA, District Judge.

Plaintiff William R. Kriskovic (hereinafter "Kriskovic") brought this action pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (hereinafter "the ADA"), alleging that he is disabled and that defendant Wal–Mart Stores, Inc. (hereinafter "Wal–Mart"), unlawfully denied him a promotion because of his disability. Before the Court is Wal–Mart's motion for summary judgment. For the reasons elaborated below, the motion is granted and the case is dismissed.

## FACTS

For the purposes of the instant motion, the court accepts as true the plaintiff's version of any controverted facts, and all reasonable inferences are drawn in the plaintiff's favor.

*Johnson v. Pelker,* 891 F.2d 136, 138 (7th Cir.1989). Any facts derived from the Defendant's Proposed Findings of Fact (hereinafter "DPF") and recited below are not contested by the plaintiff.

Kriskovic is an employee of Wal–Mart's Greenfield, Wisconsin, store and has been since May, 1992. DPF, ¶ 5. His first position there was as a night receiving associate. *Id.* at ¶ 8. In September, 1992, Kriskovic fell while attempting to retrieve a football from the roof of his house and incurred a splintering fracture of his right heel. Plaintiff's Response to Defendant's Motion For Summary Judgment (hereinafter "Plaintiff's Response"), p. 2. Due to this injury, Kriskovic underwent surgery and did not return to work until November, 1992. DPF at ¶ 12. When he did return to work, Kriskovic was medically restricted from lifting or pulling merchandise and could not climb ladders. To accommodate him, Wal–Mart gave Kriskovic a temporary "desk job." DPF at ¶¶ 13, 14. In January, 1993, while still under said restrictions, Kriskovic was promoted to night receiving manager, a job he performed at first by driving around the premises in a motorized cart supplied by Wal–Mart. Later, he used crutches or a cane. *Id.* at ¶¶ 15, 16; Plaintiff's Response at 2. In February, 1993, Kriskovic had a second operation to remove a steel plate and screws that had been implanted in his heel during the first operation to hold the bone together as it healed. Recovery from the second operation required him to resort again to the motorized cart for a brief period.

At some point after the second operation, while Kriskovic was the night receiving manager, his supervisors found fault with the "condition of [the] receiving [area of the store]." Specifically, the supervisors "were upset about the amount of merchandise in the back." Deposition of William R. Kriskovic (hereinafter "Kriskovic Dep."), July 24, 1995, p. 25. This necessitated "performance coaching"[1] by Kriskovic's supervisors, and as a result of these developments Kriskovic was removed from his position as night receiving

---

1. This expression is Wal–Mart–speak for remedial instruction given to employees who fail to do what is expected of them. It can be a step to termination or not, depending on the seriousness of the employee's mistakes. *See,* Deposition of Robert H. Thomas, January 26, 1996, p. 31–32.

manager and given an associate position in the sporting goods and automotive department of the store. *Id.* at 25, 29. While Kriskovic's hourly wage stayed the same, the transfer was a demotion in both the titular sense and the sense that he was subordinate to the manager of the sporting goods/automotive department after the transfer.[2] *Id.* at 25, 31, 78.

While these events roughly coincided with Kriskovic's period of recovery from the second operation, his use of the electric cart did not hinder his ability to perform satisfactorily as night receiving manager. *Id.* at 27. Kriskovic himself attributes the difficulties he experienced to a failure of other department managers to "take responsibility for their merchandise." *Id.* There is no evidence that Kriskovic's transfer/demotion was in any way related to his physical impairments.[3]

By the time of—or soon after—his placement in the sporting goods and automotive department, Kriskovic had recovered from his injury and surgeries sufficiently well to allow him to get around using a cane. *Id.* at 29. Then, in April of 1993, his medical restrictions were reduced to a limit on lifting of twenty pounds and a restriction against ladder use. DPF at ¶ 21; Kriskovic Dep. at 30, 41. He continued to use the cane off and on until July, 1993. In August 1993, when the sporting goods and automotive departments were split, Kriskovic was promoted to manager of the automotive department. By that point, his foot had healed considerably, he felt no pain even when straining, and would occasionally ignore the twenty pound lifting

restriction. Kriskovic Dep. at 31. In addition, he no longer needed to use a cane. *Id.*

In February of 1994, Kriskovic experienced a further injury to his right heel. This occurred on the job while pulling a pallet jack loaded with ice-melting compound. DPF at ¶ 27; Kriskovic Dep. at 36. This injury, which was a pulled tendon followed by tendinitis, did not cause him to miss any work days. DPF at ¶¶ 28, 29. Following this second injury, Kriskovic used a cane for a while and was fitted with an orthotic (a shoe insert that supports the foot). *Id.* at ¶ 32. Since setting aside the cane in late February, 1994, Kriskovic has not used a cane, crutches or the electric cart at work. *Id.* at ¶ 35. For some while after he stopped using a cane at work, Kriskovic walked with a limp. *Id.* at ¶ 33.

In April, 1994, after reviewing an internal report that Kriskovic had filed describing the circumstances of the February work-related injury, an employee of a "claims management" firm retained by Wal–Mart strongly recommended that Kriskovic be taken out of the automotive department to diminish the risk of his sustaining another injury on the job. As a result, Kriskovic was moved to an associate position in the men's wear department of the store, where the merchandise and the duty were lighter. Deposition of Robert H. Thomas (hereinafter "Thomas Dep."), January 26, 1996, p. 14. To the extent this was a demotion, it was short lived, for Kriskovic was re-promoted to manager of the men's wear department in July or August, 1994, a position he still holds. DPF at ¶ 6.

---

2. On the demotion issue, see note 3, infra.

3. With respect to the facts recited in text, the court notes that in an affidavit filed with the court after the instant motion was made, Kriskovic states: "I was moved out of the Receiving Department not because of a failure to maintain the department but rather because of my physical limitations." Affidavit of William R. Kriskovic, April 8, 1996, p. 1. Kriskovic states further: "[T]here was no demotion associated with my move to the Sporting Goods and Automotive Departments." *Id.* at 2. These statements directly contradict Kriskovic's deposition testimony, as cited above in text.

There is no evidence whatever that Kriskovic was confused at the time of his deposition testimony, and he does not otherwise attempt to explain the obvious contradictions in these sworn statements to the court. Absent a clear explanation of any inconsistencies, a party cannot create a factual dispute by filing an affidavit, after a summary judgment motion has been made, which contradicts earlier testimony. *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1297 (7th Cir.1993); *Dotson v. United States Postal Service,* 977 F.2d 976, 978 (6th Cir.1992). Accordingly, the court assumes the truth of Kriskovic's prior deposition testimony and will disregard his self-serving affidavit to the extent the latter contradicts the former.

Also in April (and/or May) of 1994, Kriskovic had two or three brief conversations with Robert Thomas ("Thomas"), the Greenfield store manager, in which Kriskovic expressed his interest in joining Wal–Mart's management trainee program, a move which would convert him from an hourly-wage to a salaried employee. On these occasions, Thomas asked questions and/or said he would get back to Kriskovic, but failed to do so. Kriskovic Dep. at 55. Next, in or around June, 1994, Wal–Mart made an announcement at the morning staff meeting at the Greenfield store that the company was looking for people to join the management trainee program. Kriskovic again expressed to Thomas his interest in joining the program. Thomas expressed optimism as to Kriskovic's chances of being admitted to the program, and said he would take the matter up with Paul Schwartz ("Schwartz"), the Wal–Mart district manager to whom Thomas answered. *Id.* at 56; Thomas Dep. at 31. Notwithstanding his optimistic representations to Kriskovic, Thomas did not actually recommend Kriskovic for the management trainee program, due to Thomas' dissatisfaction with the day-to-day "cleanliness"[4] of Kriskovic's department. Thomas Dep. at 21. This is significant because a recommendation from the store manager to the district manager—and/or from the district manager to the regional personnel manager[5]—is a condition precedent to acceptance into the management program. Deposition of Michael A. Rail (hereinafter "Rail Dep."), January 26, 1996, p. 19. It is also significant that a regional personnel manager only becomes involved in the decision whether to accept a particular hourly wage employee into the management program after the employee has been recommended by the store and/or district manager. *See, id.* at 17–19.

After some time passed with no word about the management program, Kriskovic contacted Michael Rail, the regional personnel manager, to discuss the matter. Rail happened to know Kriskovic and was familiar with his prior injuries. Rail Dep. at 30. There is no evidence that Rail knew prior to this point that Kriskovic was interested in the management program or knew that Thomas and Kriskovic had discussed the matter. *See,* Thomas Dep. at 45; Rail Dep. at 26–29; Kriskovic Dep. at 63–64.

When Kriskovic expressed to Rail his interest in being admitted to the management program, Rail disclosed that, earlier in the year, he had discussed Kriskovic's physical limitations with Thomas, together with district manager Paul Schwartz. That conversation, Rail said, related to whether Kriskovic was physically capable of doing his current job at Wal–Mart and whether they "could" fire him. Kriskovic Dep. at 63–64. There is no evidence that Rail's prior conversation related to Kriskovic's prospects for a place in the management program. *See, id.* Rail then told Kriskovic that, based on what he had heard from Thomas and Schwartz, he "could not see" Kriskovic participating in the management program because of the demands placed on assistant managers in training.[6] *Id.* at 64. When Kriskovic protested that assistant managers (i.e., present or former management trainees) sit more than (hourly wage) department managers and that his restrictions[7] would therefore not pose a hin-

---

**4.** This term refers to the fastidiousness—or lack thereof—with which Kriskovic checked, replaced, or updated merchandise, the labels thereon, and the labels on the shelves. Thomas Dep. at 21.

**5.** In the normal course, the store manager recommends the employee in writing, the district manager concurs, and the written recommendation form goes to the office of the regional personnel manager. In a minority of cases, however, the hourly employee directly approaches the district manager, who may then recommend the employee to the regional manager (apparently without the store manager's recommendation). Rail Dep. at 21. There is no indication in the record that Kriskovic called directly upon Schwartz to recommend him or that Schwartz did so on his own initiative.

**6.** The physical demands placed on (hourly wage) department managers are similar to the physical demands placed on management trainees: the latter work longer hours, but at the Greenfield store they spend more time sitting. Kriskovic Dep. at 64.

**7.** During the conversation with Rail, Kriskovic explained what his medical restrictions were, namely a twenty-five pound limit on lifting, a restriction on the climbing of ladders, and a

drance in the former role, Rail stated that management staff are supposed to spend ninety percent of their day on their feet and reiterated his view that Kriskovic was not capable of doing the job of an assistant manager.[8] Kriskovic Dep. at 64–65. Wal–Mart did not admit Kriskovic to the management trainee program in 1994, and the instant lawsuit was filed on February 6, 1995.

For purposes of the instant motion, the court assumes that—during the period relevant to this lawsuit[9]—Kriskovic had some impairment of his ability to walk. Dr. Mark A. Bauer, the orthopedist who treated Kriskovic at the time of his initial injury in 1992, has opined that Kriskovic's ability to walk might be limited to thirty to sixty minutes of uninterrupted walking. Deposition of Mark A. Bauer, M.D. (hereinafter "Bauer Dep."), January 11, 1996, p. 15. Dr. Bauer's estimate was not objectively supported by a functional capacities evaluation,[10] but rather was subjectively based on his generalized knowledge of the type of injury Kriskovic suffered and Kriskovic's remarks to him. *Id.* at 17. Similarly, the court assumes that Kriskovic had some impairment of his ability to stand for long periods of time. Dr. Bauer was likewise not in a position to quantify this impairment objectively. Bauer did quantify Kriskovic's overall disability at ten percent in the right foot but, at the same time, charac-

terized this disability as "chronic recurrent."[11] *Id.* at 22, 37. This means that while the underlying orthopedic cause of his problems is a permanent condition, Kriskovic's actual impairment is and will be episodic in nature. Thus, the court finds that the estimated ten percent total impairment—whatever it may mean—does not always cause impairment in specific activities. *See, id.* at 18–19, 37. Dr. Bauer's opinion is that Kriskovic's impairments in walking and standing were at the relevant times no more severe than those faced by an obese person. *Id.* at 24–25. Bauer opines also that Kriskovic will be able to continue working for the foreseeable future, so long as he is given appropriate opportunities to rest during the day. *Id.* at 19–20.

Consistent with Kriskovic's official medical restrictions, the court finds for present purposes that Kriskovic was during the period in question substantially impaired in his ability to lift objects greater than twenty-five pounds and that Kriskovic was not able safely to climb ladders or pull pallets of merchandise.

### Discussion

### I.

Under Fed.R.Civ.P. 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

restriction on the pulling of pallets. DPF at ¶ 55. Rail did not believe Kriskovic to have any other formal restrictions, but understood from Kriskovic that he needed rest breaks during the work day. Rail Dep. at 26.

8. Whether ninety percent is more or less than the proportion of time hourly workers are supposed to spend on their feet cannot be gleaned from the record. This is of no particular consequence, for Rail's clear intent was to impress upon Kriskovic his belief—which Wal–Mart admits was mistaken—that the management trainee job is or should be more taxing than the job Kriskovic held (and still holds).

9. The period referred to in text includes any occasions when Kriskovic was considered for the management trainee program and rejected. While this may cover much of 1994, it is clear from Kriskovic's complaint that Wal–Mart's alleged wrongful discrimination against him occurred prior to December, 1994, during which month he suffered a second on-the-job injury to his lower extremities, which in turn exacerbated

his ongoing impairments. *See,* Complaint, ¶¶ 9–17. *Cf.* Kriskovic Dep. at 46–48. To the extent Kriskovic presses evidence of such later problems on the court in his affidavit and brief in opposition to the instant motion, the court will disregard the same as irrelevant.

10. This is a test performed by a qualified therapist which aims to quantify objectively a person's capacity to do a given task. *See,* Bauer Dep. at 15–16.

11. The Court disregards statements made by Dr. Bauer in his deposition testimony to the effect that Kriskovic has or will have "impairment that substantially limits a major life activity" and to the effect that his impairments constitute or will constitute disabilities within the meaning of the ADA. *See,* Bauer Dep. at 12–14, 17–18. Such statements are in effect legal conclusions and are of no relevance to the validity of Kriskovic's claims under the ADA.

show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Contrary to Kriskovic's assertion in his brief opposing the instant motion, summary judgment is no longer a disfavored, much less a "drastic" procedural device. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327, 106 S.Ct. at 2555. It "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *United Food and Commercial Workers Union Local No. 88 v. Middendorf Meat Co.,* 794 F.Supp. 328, 330 (E.D.Mo.1992). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The question whether an issue of fact is genuine necessarily requires "some quantitative determination of sufficiency of the evidence." Childress, *A New Era for Summary Judgments: Recent Shifts at the Supreme Court,* 116 F.R.D. 183, 186 (1987). "Of course, a court still cannot resolve factual disputes that could go to a jury at trial, ... [b]ut no longer need the trial court leave every sufficiency issue for trial or a later directed verdict motion." *Id.* "A district judge faced with [a summary judgment motion] must decide, subject of

course to plenary appellate review, whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict. If not, the motion should be granted and the case dismissed." *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1572–73 (7th Cir.1989) (citations omitted). Thus, a party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corporation,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[A] party must produce 'specific facts showing that there remains a genuine issue for trial' and evidence 'significantly probative' as to any [material] fact claimed to be disputed." *Branson v. Price River Coal Company,* 853 F.2d 768, 771–72 (10th Cir.1988). Nor may "[a] party to a lawsuit ... ward off summary judgment with an affidavit or deposition based on rumor or conjecture. 'Supporting and opposing affidavits shall be made on personal knowledge,....'" *Palucki,* 879 F.2d at 1572 (7th Cir.1989). Such principles insure that summary judgment is utilized "when it can be shown that a trial would serve no useful purpose." *Windham v. Wyeth Laboratories, Inc.,* 786 F.Supp. 607, 610 (S.D.Miss.1992).

## II.

The Americans with Disabilities Act prohibits an employer from discriminating against a qualified individual with a disability based on that person's disability. 42 U.S.C. § 12112. Thus, as a threshold matter, a plaintiff suing under the ADA must establish that he has a disability. *Roth v. Lutheran General Hospital,* 57 F.3d 1446, 1454 (7th Cir.1995). Next, in order to prevail on an ADA claim, a plaintiff challenging an adverse employment decision must show that he is otherwise qualified for the job he seeks and that the employer excluded him from that job because of his disability. *See, id.* at 1457 n. 17 (citing *Byrne v. Board of Education, School of West Allis–West Milwaukee,* 979 F.2d 560, 563 (7th Cir.1992)).[12] As elaborat-

---

**12.** *Byrne* was a case interpreting language from      the Rehabilitation Act of 1973, as amended, 29

ed below, the court finds as a matter of law that Kriskovic did not have a disability within the meaning of the ADA at the time the challenged employment decision occurred. Alternatively—and assuming arguendo that Kriskovic was disabled and otherwise qualified for a position in Wal–Mart's management program—the court finds no evidence from which a jury could rationally conclude that Wal–Mart denied him such a position because of his alleged disability. For these reasons, Kriskovic's claim under the ADA is not valid, and Wal–Mart's motion for summary judgment must be granted.

## A.

The threshold question is whether Kriskovic's impairments during the period in question constituted a disability within the meaning of the ADA. As used in the ADA, the term "disability" means: (1) a physical or mental impairment that substantially limits one or more of the major life activities of the individual in question; (2) a record of such impairment; or (3) the state of being regarded as having such an impairment. 42 U.S.C. § 12102(2). *Cf. Vande Zande v. State of Wisconsin Department of Administration,* 44 F.3d 538, 541 (7th Cir.1995). Kriskovic argues that he had a "disability" under each of these three prongs at the time Wal–Mart excluded him from its management program.

### 1.

■ With respect to the first prong, it is clear that Kriskovic had physical impairments during the period relevant to this lawsuit. However, not every physical impairment constitutes a disability. Only an impairment that "substantially limits" a "major life activity" of the individual triggers the protections of the ADA. *Howard v. Navistar International Transportation Corp.,* 904 F.Supp. 922, 927 (E.D.Wis.1995) (citing *Roth,* 57 F.3d at 1454; *Hamm v. Runyon,* 51 F.3d 721, 726 (7th Cir.1995)). The statute's inclusion of the words "substantially" and "major" makes it clear that the impairment in question must be a signif-

icant one, *Byrne,* 979 F.2d at 564, but the precise range of impairments to which the ADA applies cannot otherwise be gleaned from its text.

■ In regulations promulgated under the ADA, the EEOC has stated that "major life activity" means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The list given is non-exhaustive, *see* EEOC guidelines, 56 Fed.Reg. 35,741 (July 26, 1991), but gives only modest indication as to what other activities count. The EEOC has referred to major life activities as "basic activities that the average person in the general population can perform with little or no difficulty." *Id.* This too is an open-ended guideline, but use of the words "function" and "basic" in the EEOC's interpretive pronouncements does indicate that—in order to be "major"—the activity in question must generally be among those that are a necessary part of the everyday lives of most people or are otherwise "basic functions." *See, id.* Thus most people need to bathe, dress, eat, walk, see, hear, breathe, etc. on a daily basis, making these activities "major" and within the sweep of 42 U.S.C. § 12102(2). It is also possible that activities which do not happen every day are nevertheless basic functions for most people—procreation is an example, *see Pacourek v. Inland Steel Co.,* 858 F.Supp. 1393, 1404 (N.D.Ill.1994)—but these would be few and far between.

■ In addition to being "major", the activity affected by an ADA plaintiff must be "substantially" limited by the impairment. The ADA regulations state that "substantially limits" means that which renders the individual either "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted in the duration, manner or condition under which an individual can perform a particular major life activity as compared to . . . the average person in the gen-

---

U.S.C. § 701 *et seq.,* which defines "handicap" (apparently a now-disfavored word) in the same manner as the ADA defines "disability." *See,* 29 U.S.C. § 706(8)(B). Congress intended that Re-

habilitation Act case law should inform courts' determinations as to the existence of disabilities under the ADA. *See, Vande Zande v. Wisconsin Dept. of Admin.,* 44 F.3d 538, 542 (7th Cir.1995).

eral population[.]" *Id.* (*quoting* 29 C.F.R. § 1630.2(j)). That the latter part of this definition uses "significantly restricted" to define "substantially limited" is unhelpful, but it seems clear that an ADA plaintiff must generally show that his impairment in a given activity arguably places him outside the range of abilities in that activity that one finds among non-disabled people in the general population. *See,* 56 Fed.Reg. at 35,741 ("the term 'average person' is not intended to imply a precise mathematical 'average' ").

■ One category of impairments presenting peculiar definitional issues—where the range of abilities found among non-disabled persons in the general population is largely irrelevant—is that of limitations on the activity of working. Because "working" includes a constellation of specific activities or tasks—many of which will not otherwise qualify as "basic functions"—whether a plaintiff is disabled due to limitations on his ability to work will often depend on considerations other than those taken into account for more unitary activities. *Cf. Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 726 (5th Cir.1995).

■ In order to show a substantial limitation on the activity of working, an ADA plaintiff must show "significant[ ] restrict[ion] in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person *of comparable training, skills and abilities." Bolton v. Scrivner,* 36 F.3d 939, 942 (10th Cir.1994) (*quoting* 29 C.F.R. § 1630.2(j)(3)(i)) (emphasis added). The inability to do any one particular job does not constitute a substantial limitation on the major activity of working. 29 C.F.R. § 1630.2(j)(3)(i). Rather, "an ADA plaintiff alleging such disability must be precluded from working generally" at jobs suitable to his training and experience. *See, Kohnke v. Delta Air Lines, Inc.,* 1995 WL 505973 *4 (N.D.Ill.1995).

In the present case, Kriskovic claims that he is substantially impaired in working, walking, standing, lifting, pulling, pushing, and climbing (stairs and ladders). Plaintiff's Memorandum in Opposition to Defendant's Motion For Summary Judgment (hereinafter "Plaintiff's Brief"), p. 4. Of these, the plaintiff asserts that working, walking, climbing

stairs, and climbing a stepladder are "major life activities." *Id.* at 5. Kriskovic asserts further that, even if he was not substantially impaired in any of these activities during the period in question, multiple impairments in combination may and did in his case limit major life activities. *Id.* The court addresses these assertions seriatim and concludes that no rational jury could find Kriskovic substantially limited in any major life activity.

■ First, Kriskovic's assertion that he is substantially impaired in working is patently meritless. Kriskovic has missed work due to his foot problems only for discrete periods of time immediately after his initial injury and surgical operations. Those debilitating events and associated recovery periods were intermittent and episodic. And, as Judge Posner has noted, "[i]ntermittent, episodic injuries are not disabilities, the standard example being a broken leg." *Vande Zande,* 44 F.3d at 543. Since recovering from his second injury in February–March, 1993, Kriskovic has not missed any days of work due to his impairments and, when at work, has been able to do his job. Kriskovic Dep. at 49. There is evidence that he was impaired—and substantially so—in his ability to move heavy pallets in the automotive department and elsewhere, but this does not begin to establish that he is substantially impaired in working. His impairment in this regard merely caused Wal–Mart to move him to men's wear—with no loss of pay and only a temporary demotion. He has worked there as manager ever since. This is a higher position at Wal–Mart than the associate job he had prior to his fall from the roof of his house in September, 1992. It is thus abundantly clear that Kriskovic is not "precluded from working generally", and the court finds as a matter of law that he is not substantially impaired in the activity of working.

■ Second, while the court agrees that standing and walking are major life activities and assumes for present purposes that Kriskovic has limitations in his ability to do both, there is no evidence that Kriskovic was substantially limited in standing or walking during the period relevant to this lawsuit. Kris-

kovic testified that he stopped using a crutch or a cane at work after his initial recovery from his February 1994 on-the-job injury. He testified that after sustaining that injury he walked with a limp when not using a cane, but there is no evidence that the limp continued beyond the time he ceased to use a cane, much less that the limp continued through the spring and summer of 1994. Nor does Kriskovic's testimony reveal any significant restriction in the manner or duration of his ability to stand and walk. To the contrary, Kriskovic admits that he spends the great majority of his day standing and walking around (in the normal manner, without a cane) in the department he manages. Kriskovic Dep. at 48–50. Nor does Kriskovic's acknowledged need to take rest breaks bolster his case appreciably. Non-impaired people doing the same job would need rest breaks; Kriskovic has not shown—nor is there a reasonable basis to infer—that he needed substantially longer or more numerous rest breaks during the work day than others similarly employed. In short, there is nothing in Kriskovic's testimony to indicate that he was substantially limited in standing or walking.

Dr. Bauer, however, did proffer an estimated time limit on Kriskovic's ability to walk, namely "thirty to sixty minutes." But this estimate and the rest of Bauer's testimony are couched in imprecise, subjective terms. Dr. Bauer admits that no objective tests have been done to ascertain the limits of Kriskovic's ability to walk. He grounds his estimates only on his familiarity with Kriskovic's type of injury and Kriskovic's comments to him. Even if this were sufficient evidence to permit trying the issue of substantial impairment in walking to a jury, it is irreparably undermined by Dr. Bauer's admission that he did not actually see X-rays of Kriskovic's foot that were taken after the second operation and does not know exactly how the bones in the foot have healed. *See,*

Bauer Dep. at 45. In the court's view, this renders Bauer's opinions too uninformed and speculative to create a triable issue.[13] Thus the court finds no evidence from which a jury could rationally conclude that Kriskovic was substantially impaired in his ability to stand or walk at the time Wal–Mart declined to admit him into its management program.

■ Third, while the court accepts for present purposes that climbing stairs is a major life activity, there is likewise no concrete evidence from which a jury could reasonably conclude that Kriskovic was substantially impaired in that regard. Kriskovic asserts no such impairment in his deposition testimony or affidavit in opposition to the instant motion. Kriskovic did not, at the relevant times, have a medical restriction against stair climbing. Dr. Bauer stated only that he "would discourage" Kriskovic from climbing flights of stairs greater than 5–10 steps. This is hardly probative of whether Kriskovic has a substantial limitation—indeed, it appears that Dr. Bauer declined even to guess what Kriskovic's actual limitations in stair climbing might be. To the extent Dr. Bauer's remarks imply an estimated limitation, it is rank speculation, unsupported by objective testing or actual knowledge of how Kriskovic's bones have healed. "Speculation does not raise an issue of fact; instead it creates a false issue, the demolition of which is a primary goal of summary judgment." *Hedberg v. Indiana Bell Telephone Company,* 47 F.3d 928, 932 (7th Cir.1995).

■ Fourth, Kriskovic cites no case law in support of his assertion that climbing ladders is "clearly a major life activity." To the contrary, in this court's view, a jury could not reasonably conclude that ladder climbing is a "basic function" in the same category as walking, working, and the other examples

---

13. The materiality of Dr. Bauer's opinions is undermined also by his admission that Kriskovic is no more impaired in his ability to walk and stand than an obese person. Obese people are not disabled within the meaning of the ADA, except in extraordinary circumstances. *See,* 56 Fed.Reg. at 35,741. With this in mind, the court is of the view that a plaintiff whose physical or mental impairments leave him able to stand, walk, or do any other particular activity as well as an obese person cannot reasonably be deemed significantly restricted or substantially limited in that regard. To hold otherwise in this case would be to declare that obese people have a disability in standing and walking under the ADA, which the court declines to do.

given in 29 C.F.R. § 1630.2(i). So while Kriskovic did have a medical restriction against ladder use—from which the court infers a substantial limitation in that activity—his impairment in this regard did not constitute a disability under the ADA.

Fifth, while Kriskovic does not appear to argue that pushing, pulling and lifting objects heavier than twenty-five pounds are major life activities, he states that his impairments in these activities and/or other impairments may in combination substantially limit a major life activity. Plaintiff's Brief at 3 (*citing* 56 Fed.Reg. at 35,741). While he is correct on the legal point, Kriskovic fails to allege in his brief *which* of his major life activities was impaired by his aggregated impairments during the period in question. To the extent Kriskovic invites the court to infer or guess which one(s) he means, the court declines to do so. Hence, because Kriskovic fails in this respect to come forward with specific facts to support his claims, his "multiple impairments in combination" argument will not defeat the instant motion. Fed.R.Civ.P. 56(e).

2.

■ Citing the second prong of the definition of "disability" given in § 12102(2), Kriskovic asserts that he has a record of disability. This argument is also meritless. As noted above, the injuries and surgical operations that Kriskovic experienced were intermittent and episodic, akin to the broken leg in Judge Posner's example. *See, Vande Zande v. State of Wisconsin*, 44 F.3d at 544. And while the *Vande Zande* opinion does not spell it out, it is quite clear that the "episod[e]" that begins with a broken leg (or heel) ends only after medical treatment and some reasonable period of recuperation. Hence impairments during any such period— no matter how severe—are not disabilities. Accordingly, the court holds that any impairments Kriskovic had while recuperating from his first injury, his two operations, and his second injury cannot be considered disabilities within the scope of the ADA. Moreover, as discussed above, the court finds that Kriskovic had no disability after recovering from his second operation. Thus a jury could not

reasonably conclude that Kriskovic had a history of disability under the second prong of the ADA definition. Contrary to what Kriskovic suggests in his brief, the severity of the initial injury, the severity of his impairments during recovery from the two operations, and the fact that he re-injured himself on the job are irrelevant to the record-of-disability issue.

3.

■ The third and last prong of the ADA's definition of "disability" applies to persons who may not have a disability under prong one but are nevertheless *regarded* as having an impairment which substantially limits a major life activity. 42 U.S.C. § 12102(2)(C). Kriskovic claims that Wal–Mart so regarded him. This "perception" argument is also meritless.

The ADA regulations define "regarded as having such an impairment" as follows:

a. having a physical or mental impairment that does not substantially limit major life activities but being treated by a covered entity as constituting such limitation;

b. having a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

c. not having a physical or mental impairment but [being] treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(1). This part of ADA assures that a truly disabled—but objectively capable—individual will not be denied employment or career advancement due to an employer's *unfounded belief* that the individual's disability prevents him from doing the job competently. *See, Vande Zande*, 44 F.3d at 541; *Forrisi v. Bowen*, 794 F.2d 931, 933 (4th Cir.1986).

■ The text of § 12102(2)(C) makes clear that a claim of perceived disability requires some element of *mis*perception or prejudice on the part of the employer. Cf. Vande Zande, 44 F.3d at 541. Here, there is no evidence that Wal–Mart perceived Kriskovic to have impairments any greater than

those he actually had. The record reveals that Wal–Mart understood Kriskovic's limitations and accommodated Kriskovic in whatever manner Kriskovic (and his doctors) requested during the aftermath of his first injury, two operations, and second injury. When, for example, Wal–Mart transferred Kriskovic from automotive to men's wear, Wal–Mart obviously treated Kriskovic as having an impairment, but there is no evidence that Wal–Mart perceived him to have an impairment he did not have, much less one that substantially limits a major life activity. Kriskovic was transferred after he injured himself pulling a pallet because Wal–Mart concluded that he was not able safely to move the heavy merchandise sold in the automotive department. Pulling pallets is not a major life activity, nor is heavy lifting. *See, e.g., Ricks v. Xerox,* 877 F.Supp. 1468, 1474–76 (D. Kansas 1995), *aff'd,* 96 F.3d 1453 (10th Cir.1996). Such impairments might—depending on the individual—cause substantial impairment in working, *see id.,* but that is patently not the case here. Wal–Mart had a fair understanding of Kriskovic's impairments, and did no more than take a reasonable step to diminish the likelihood of Kriskovic being injured again. In any case, the fact that Wal–Mart deemed Kriskovic incapable of safely performing one job and transferred him to another does not create an issue as to whether the company regarded him as having a disability. *See, Byrne,* 979 F.2d at 567.

In his brief, Kriskovic appears to argue that the alleged statement of Personnel Manager Rail that Kriskovic "was not medically qualified" for a position in the management trainee program establishes that Wal–Mart regarded him as having a disability. *See,* Plaintiff's Brief at 9. While it is true that Rail's remarks were unfounded and based on misperception, but it does not necessarily follow that Rail—or, through him, Wal–Mart—regarded Kriskovic as being disabled within the meaning of the ADA. To the contrary, Rail's alleged comments appear to have been based on misperceptions about what management trainees at the Greenfield store actually *do—not* on misperceptions about Kriskovic's physical impairments. Kriskovic's account of his conversation with Rail makes clear that this was so, and the court sees no reason to infer otherwise. Rail was, after all, based in Arkansas at Wal–Mart's headquarters; he visited the Greenfield store only on occasion. It is thus no surprise that he had an inaccurate understanding of what management trainees actually do up in Greenfield. In any case, Kriskovic cites no authority for the proposition that insensitive or factually incorrect remarks by an officer of an employer in a private conversation, well removed from the workplace—without more—create a triable issue as to whether an employee was regarded as having a disability in the manner contemplated by the ADA.

Even if Rail did regard Kriskovic as having a disability, the court is of the view that an ADA "perception" claim based solely on statements of supervisors requires the plaintiff to show that discriminatory remarks were made by some one involved in some way with the adverse employment decision challenged by the plaintiff. Only upon doing so may the employee fairly be said to raise an issue as to whether he was "treated as having a [disability]" or whether he was "substantially limit[ed in] major life activities only as a result of the attitudes of others" towards his impairments. 29 C.F.R. § 1630.2(1).[14] Kriskovic has made no such showing here, for there is no evidence that Rail was involved in the decision to exclude Kriskovic from the management program.

---

14. To make the point concretely, consider the employee who most everyone in the company thinks is ineligible for promotion due to invidious prejudice against, say, people in wheelchairs. If and so long as the persons making promotion decisions fairly and correctly assess the employee's ability to do the job if promoted—with reasonable accommodation if necessary, per 42 U.S.C. § 12112(b)(5)(A)—it cannot fairly be said that *the employer* regarded the employee as having a disability or that the employee was "limited ... due to the attitudes of others." This would be true even where the majority of other employees at the firm would so regard him. In this sense, the question whether a supervisor's remarks show that the employer regarded the employee as having a disability melds into the question whether an employer has discriminated against the employee because of that disability.

Rail's uncontradicted testimony is that a regional personnel manager does not become involved in the decision whether to accept a particular hourly employee into the management program unless and until a recommendation was made by the store manager. Thomas' uncontradicted testimony is that he made no such recommendation on Kriskovic's behalf. Kriskovic does not allege—nor would it be reasonable to infer—that Rail, Thomas, and Schwartz had decided *prior* to the Rail–Kriskovic conversation that Kriskovic should be excluded from the program based on his physical impairments. There is simply no suggestion in Kriskovic's testimony that the alleged Rail–Thomas–Schwartz conversation broached the subject of Kriskovic's suitability for management program. Neither Rail, Thomas, nor Schwartz say otherwise, and it is therefore established for present purposes that Rail was not involved in the decision to shut Kriskovic out of the program. Thus, the court finds no evidence to support the contention that Wal–Mart regarded Kriskovic as having a disability within the meaning of § 12102(2)(C).

4.

To summarize the foregoing, the court finds that Kriskovic has not presented evidence from which a jury could rationally conclude that he had a substantial impairment of a major life activity, or a history of such impairment, or that Wal–Mart regarded him as having such an impairment. He thus did not have a "disability" within the meaning of the ADA at the time Wal–Mart denied him a place in its management training program.

B.

▮ Even assuming that Kriskovic was disabled within the meaning of the ADA and accepting that he was otherwise qualified [15] at the time he was denied a place in the management program, there is no evidence from which a jury could rationally conclude that Wal–Mart discriminated against Kriskovic based on his alleged disability. This is an alternative grounds upon which to grant the instant motion.

Kriskovic alleges in his complaint that Wal–Mart denied his promotion to the management training program solely because of his alleged disabilities. Complaint, ¶ 19. To withstand a motion for summary judgment, however, he must come forward with specific factual allegations to support his claim. Fed. R.Civ.P. 56(e). He has failed to do so. Thomas declined to recommend Kriskovic for the program due to deficiencies in the way Kriskovic performed his job as department manager. This non-discriminatory reason for the employment decision at issue is not challenged in any of Kriskovic's filings with the court. And where a stated non-discriminatory reason for an employer's action stands unchallenged, summary judgment will normally be granted. *See, Russell v. Acme–Evans Company,* 51 F.3d 64, 69 (7th Cir. 1995).

To the foregoing, the court would add that is there no evidence in the record from which the court may reasonably infer that the stated reason for Thomas' conduct was pretextual. Kriskovic's filings with the court make it clear that he views Rail's remark that Kriskovic was "not medically qualified" for the management program rather like a smoking gun, from which the court should infer discrimination. But Rail's statement—however insensitive and factually incorrect it may have been—does not show that Thomas' stated reason for not recommending Kriskovic for the management program was pretextual. As noted above, Kriskovic has failed to demonstrate any nexus between Rail's remarks— or Rail himself—and the adverse employment decision at issue in this case. This renders the alleged remarks immaterial to the issue of discrimination. *See, Bolton,* 36 F.3d at 944. For this reason and because Kriskovic otherwise fails to challenge Thomas' asserted reason for excluding him from the program, the court finds in the alternative that Kriskovic has not presented evidence from which a jury could rationally conclude that Wal–Mart denied Kriskovic a

---

**15.** The parties agree that someone who is physically capable of doing the job of department manager is likewise capable of participating in the management training program.

position in its management training program because of his alleged disabilities.

In summary, Kriskovic has failed to raise genuine issues both as to whether he had a disability within the meaning of the ADA and as to whether Wal–Mart discriminated against him because of his alleged disabilities. For these alternative reasons, the instant motion must be granted and the case dismissed.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

**The motion of Defendant Wal–Mart Stores, Inc. for summary judgment is GRANTED, and the case is DISMISSED.**

**SO ORDERED.**