William PIASCYK, Plaintiff,

v.

CITY OF NEW HAVEN, New Haven Police Department, Nicholas Pastore, Chief of New Haven Police Department, Defendants.

No. 3:96CV1445 RNC.

United States District Court, D. Connecticut.

July 14, 1999.

## RULING AND ORDER ON DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

CHATIGNY, District Judge.

Plaintiff, William Piascyk, a police officer for the City of New Haven, brings this action against the City of New Haven and the New Haven Police Department, asserting a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.[1] Plaintiff claims that he was denied a promotion to the position of Superintendent of Motor Vehicles as a result of discrimination on the basis of his alleged disability.[2] Upon completion of plaintiff's presentation of evidence regarding his alleged disability, defendants have moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure on the ground that plaintiff has failed to present sufficient evidence to allow a reasonable jury to find that he is an individual with a "disability" within the meaning of the ADA. 42 U.S.C. § 12102(2). For reasons that follow, the court has concluded that defendants' motion should be granted.[3]

## I. BACKGROUND

Viewed most favorably to plaintiff, the relevant evidence is as follows. Plaintiff joined the New Haven Police force as a patrol officer in 1974. (Plaintiff's Testimony.) In 1982, he was promoted to detective. (*Id.*) In 1990, the position of Superintendent of Motor Vehicles for the police department became vacant. (*Id.*) Plaintiff applied for the position and received the highest score on the relevant civil service examination in August 1990. (*Id.*) The Chief of the Police Department, Nicholas Pastore, who had authority to fill the va-

Alexander Scheirer, Scheirer & Geller, New Haven, CT, for Plaintiff.

Thomas W. Ude, Jr., Office of Corporation Counsel, City of New Haven, New Haven, CT, Kenneth J. Mastroni, Milano & Wanat, Branford, CT, for Defendants.

1. Plaintiff initially named as a defendant Nicholas Pastore, the former chief of the New Haven Police Department. During trial, he withdrew the claim against Pastore. (Doc. # 54.)

2. Plaintiff initially asserted a retaliation claim under the ADA, but he dropped that claim when he submitted his amended complaint.

3. The court granted defendants' motion in court on April 19, 1999, and stated that this written ruling and order would follow.

cancy with an individual from the list of the top three scorers on the examination, refused to appoint anyone to the position. (*Id.*) In 1991, plaintiff, in conjunction with his union and the other top scorers, sued in state court to compel the chief to fill the position. (*Id.*; Defendants' Exhibit 9.)

On May 12, 1991, while performing an extra-duty assignment, plaintiff was struck by an automobile. (Plaintiff's Testimony.) He sustained many injuries, including a fracture in his lower right leg, and sprains and strains in his lower back. (Luchini's Testimony.) As a result of these injuries, plaintiff remained on leave while collecting workers' compensation until October 1992. (Plaintiff's Testimony.)

During this period, plaintiff was treated by Dr. Michael Luchini, an orthopaedic surgeon, who submitted numerous reports to the City of New Haven's Workers' Compensation Division regarding plaintiff's condition.[4] (Plaintiff's Exhibit 11.) These reports detail the conservative treatment applied by Dr. Luchini, and document slow but steady improvement of plaintiff's back and right leg injuries. (*Id.*)

On August 7, 1992, plaintiff was examined by Dr. John J. Shine, who was retained by the City in connection with plaintiff's workers' compensation claim. Dr. Shine's report stated:

*Present History* . . . . As far as his right ankle is concerned he has pain on the medial aspect of the ankle which extends around from the anterior to the posterior aspect. The right ankle pain is present every day most of the day as a mild pain. Once a day he gets a severe pain associated with a clicking that will last from a few seconds to a few hours. He denies any prior problems with his ankle. The pain is aggravated by walking. He is able to walk about a half a mile. He does use intermittently an aircast

and the pain, he states[,] is improving. He uses Motrin or extra strength Tylenol for the pain.

The patient has also lower back pain which is present on both sides of the lower lumbar area that is present every day most of the day as a mild to occasionally severe pain. There is no history of any bladder or bowel dysfunction. . . . The patient says that he is otherwise in good health . . . .

*Physical Examination.* On physical examination the patient weighs 300 lbs and is 6′ 1/2″ in height. His gait is slightly abnormal with some stiffness on the right side, most notable when he first gets up and seems to decrease as he begins to walk. He was able to rise on his toes and heels adequately, some difficulty in rising on his toes due to the pain in the ankle. He was able to bend forward from his waist 80 [degrees], bend back 20 [degrees] and side bend 30 [degrees] to the right and left with some pain at the extremes of motion. There was tenderness in the lower lumbar spine. Straight leg raising was negative to 90 [degrees] in the sitting position. His deep tendon reflexes were 2+ at the knee and 1+ at the ankle on the left side. The right ankle jerk was absent. The right ankle showed decreased range of motion with plantar flexion of 20 [degrees] compared to 30 [degrees] on the left and dorsiflexion of zero compared to 20 on the opposite side. There was about 50% reduction in the normal subtalar motion compared to the opposite foot. There was no obvious bony deformity or significant swelling . . . . There was no significant complaint in the area of the previous fibular fracture nor was there any tenderness. There was no significant suggestion of any swelling or tension within the muscle

---

**4.** Plaintiff was treated, as well, by Dr. Alfred Ranieri, who also submitted reports to the City regarding plaintiff's condition. With respect to the injuries at issue, Dr. Ranieri's reports essentially echo those of Dr. Luchini.

(Plaintiff's Exhibit 11.) Plaintiff did not allude to Dr. Ranieri's reports during his presentation of evidence or oral argument before the court.

compartments of the leg as compared with the opposite side....

*Impression and Suggestion*.... at the present time I would estimate that he has a 12[and] ½ % impairment of his right ankle and a 5% impairment of his lumbar spine function .... I would believe the patient at this time should be able to return to some light selected work which would have to be primarily sedentary office type of work with limited physical activity. He cannot lift more than 15 lbs., cannot walk for prolonged distances and at least for the foreseeable future it is unlikely that he would be able to return to the normal activities of a policeman which would require running, jumping, bending, stooping, carrying heavy loads, climbing ladders, etc. Weight reduction would also be beneficial in relieving his lower back and ankle symptoms.

(Plaintiff's Exhibit 11.)

On September 21, 1992, Dr. Luchini released plaintiff to light duty work effective October 5, 1992. He forwarded a return to work slip to Chief Pastore reflecting that decision. (Defendants' Exhibit 2.) He also sent a report to the City of New Haven Workers' Compensation Division which stated:

Police officer Piascyk .... reports that he is doing reasonably well except for his multiple areas of aches and pains. He is particularly concerned about persisting low back pain. He also has pain, of course in the right lower extremity about the ankle and more proximally about the calf and knee....

*Examination* .... The back is tender in the paralumbar musculature. He has some limitation of motion with forward bending and side to side. He has no distal radiculpathy. He has some tenderness of the right calf musculature and still some relative mild tightening of the right calf as compared to the left. He walks with an antalgic gait on the right side. He has a mild effusion in the right ankle.

*X–Ray Examination* Right knee—some mild degenerative changes about the knee. The fibular fracture is apparent and it has healed. The right ankle has the same area of osteochondritis dissecans, but no collapse of the joint space. Previous films ·... of the lumbar spine .... show degenerative changes around the lower thoracic area as well as the lumbar area.

I would consider police officer Piascyk to have reached maximum medical improvement at this time. There is a chance that it could get worse particularly with regard to his ankle. He should return to light duty work effective October 5, 1992. I would consider this gentleman to have suffered approximately 20% (twenty percent) permanent partial impairment to the right lower extremity as a result of this injury to the ankle as well as the fibular fracture and soft tissue injury to the right calf musculature. He also has approximately 10% (ten percent) permanent partial impairment to the lumbar spine as a result of this accident of 5/12/91.

(Plaintiff's Exhibit 7.)

Upon receiving Dr. Luchini's return to work slip, Chief Pastore wrote to Dr. Luchini and inquired, "What is Detective Piascyk's prognosis for full recovery and return to *full duties?* Please provide a framework in terms of time needed to reach full recovery and return to 'regular' full duty." (Plaintiff's Exhibit 8 (emphasis in original).) In response, following his next examination of plaintiff, on November 23, 1992, Dr. Luchini reported: "I would like [plaintiff] to start out on light duty work. Maybe he can go back to regular duty after that. He probably could go to regular full work at some point in the future, but will be in pain with the work." (Plaintiff's Exhibit 15; Luchini's Testimony.)

On January 18, 1993, Luchini reported that plaintiff remained concerned about the persistent pain in his lower back, and

that "[h]e still gets some clicking in his ankle [but it] is not always severe." The doctor also reported that plaintiff did "not want to have any further treatment right now, but will continue to try to lose weight, try to keep in as good shape as possible . . . ." (Plaintiff's Exhibit 20; Luchini's Testimony.)

According to Dr. Luchini's testimony, plaintiff has post-traumatic arthritis in his ankle, chronic sprain injuries in his lumbar spine area, and mild degenerative disease in his lumbar spine. (Luchini Testimony.) Luchini stated that these injuries have "affect[ed plaintiff's] function with regard to standing—prolonged standing," and prevent him from walking "for long distances." (*Id.*) Luchini also testified that the injuries have caused loss of the ability to run, jump, crawl and climb ladders. (*Id.*) In addition, Luchini stated that plaintiff "can't do bending." (*Id.*)

Plaintiff, who extended his leave for a few months beyond his October 5, 1992 release to light duty through use of accumulated sick time, returned to a light duty position as a detective in the juvenile division on January 26, 1993. (Plaintiff's Testimony.) Plaintiff testified that at that time he could only walk slowly and he could not walk "for a long period of time"; had a severe limp; was unable to run; could not engage in sports; was able to drive only with his left foot; found it difficult to ascend stairs; and could not "sit for long periods of time," sometimes not longer than fifteen or twenty minutes, at other times not longer than two hours. (Plaintiff's Testimony.)

Upon plaintiff's return, the position of Superintendent of Motor Vehicles remained vacant. (*Id.*) When plaintiff asked Pastore in February 1993 how the selection process was going, Pastore replied, "You're injured," and walked away. (*Id.*)

On May 11, 1993, Dr. Luchini released plaintiff to regular work duties, effective June 1, 1993. He forwarded to the police department a return to work slip reflecting that decision. (Defendants' Exhibit 2.)

In September 1993, the state court litigation concerning the vacant Superintendent's position was resolved with an agreement that Pastore would promptly appoint one of the three individuals who scored highest on the civil service examination. (Defendants' Exhibit 9.) Pastore subsequently appointed Officer Thomas White, who had the second highest score. (White's Testimony.) Approximately one month later, plaintiff was taken off light duty and returned to a regular duty position. (Plaintiff's Testimony.)

On January 18, 1994, plaintiff filed a complaint with the Equal Opportunity Commission ("EEOC") alleging that the appointment of White instead of plaintiff violated plaintiff's rights under the ADA. (Complaint, ¶ 3; Answer, ¶ 3.) The EEOC subsequently issued to the plaintiff a "right to sue" letter, pursuant to which, on July 30, 1996, he filed the instant suit. Following discovery and motion practice, pretrial conferences were held on April 5, 1999, and April 13, 1999; the jury was selected on April 13, 1999; and the trial commenced April 19, 1999.

Following the testimony of plaintiff, Officer White and Dr. Luchini, and the admission of plaintiff's exhibits 1–20 and defendants' exhibits 1–9, plaintiff informed the court that he had completed his presentation of evidence concerning his alleged disability and that, therefore, the court could properly consider the sufficiency of the evidence on that issue. (Transcript for April 19, 1999, p. 3.) Defendant thereupon moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, arguing that plaintiff had failed to establish that he is an individual with a disability within the meaning of the ADA. (*Id.* at 4, 51.) After oral argument (*id.* at 4–10), the court stated that the evidence appeared insufficient and explained the reasoning underlying that view. (*Id.* at 10–18.) A recess was taken in order to give plaintiff an opportunity to prepare a response. (*Id.* at 18–19.)

Another round of oral argument ensued (*id.* at 20–45), following which the court orally granted defendant's motion for judgment as a matter of law, stating that this written ruling and order would follow. (*Id.* at 45–52.)

## II. DISCUSSION

■ Pursuant to Rule 50(a), a defendant may bring a motion for judgment as a matter of law after the plaintiff "has been fully heard" on an issue essential to his claim. Fed.R.Civ.P. 50(a). The court should grant the motion "when the evidence, viewed in a light most favorable to the nonmoving party, is such that a rational juror could reach but a single conclusion" with respect to that issue. *Gardiner v. Incorporated Village of Endicott*, 50 F.3d 151, 154 (2d Cir.1995). The court considers the evidence favorable to the nonmovant, as well as the unfavorable evidence that is unimpeached and uncontradicted. *See County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1314 (2d Cir.1990).

Defendants argue for judgment as a matter of law on the ground that no reasonable juror could find that plaintiff is an individual with a "disability" within the meaning of the ADA. 42 U.S.C. § 12102(2). Under the ADA, "disability" is defined as:

  (A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual;

  (B) a record of such an impairment; or

  (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Plaintiff argues that he is disabled under prong (A) and prong (C).[5] Though there is evidence that plaintiff suffered from physical impairments,

the evidence does not establish that those impairments substantially limited a major life activity. The evidence also fails to establish that defendants regarded plaintiff as having a substantially limiting impairment. Accordingly, defendants' motion is granted.

### A. § 12102(2)(A)

The Supreme Court has outlined a three-step process for determining whether a plaintiff has a disability under subdivision (A) of the ADA's definition. *See Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 2202, 141 L.Ed.2d 540 (1998). Pursuant to this process, it is necessary to determine: (1) whether plaintiff has a physical or mental impairment; (2) whether the activity allegedly limited by the impairment is a major life activity within the meaning of the ADA; and (3) whether the impairment substantially limits that major life activity. "In order to be eligible to prevail upon a further showing of discrimination, a plaintiff must satisfy each of the three prongs." *Colwell v. Suffolk County Police Dept.*, 158 F.3d 635, 647 (2d Cir.1998).

### 1. Impairment

■ According to EEOC regulations, a "physical impairment" includes any physiological condition affecting the musculoskeletal system. 29 C.F.R. § 1630.2(h)(1); *see Francis v. City of Meriden*, 129 F.3d 281, 283 n. 1 (2d Cir.1997) (stating in regard to EEOC regulations defining "disability" under the ADA, "[w]e accord great deference to the EEOC's interpretation of the ADA,"); *see also Albertsons, Inc. v. Kirkingburg*, —— U.S. ——, 119 S.Ct. 2162, 2167 n. 10, —— L.Ed.2d —— (1999) ("we

---

5. Though plaintiff suggested during the April 13 pretrial conference that he would rely on § 12102(2)(B) (Transcript for April 13, 1999, p. 14), later in the same conference he indicated that his case theory did not encompass such a claim. (*Id.* at 29.) Moreover, during the extended colloquy with the court concerning defendants' motion for judgment as a matter of law, he made no claim based on, and offered no argument pertaining to, subdivision (B). (*See* Transcript for April 19, 1999, pp. 3–52.) Accordingly, the court considers any such claim abandoned.

assume, without deciding, that [the regulations and interpretive guidance promulgated by the EEOC relating to the ADA's definitional section] are valid"); *but see Sutton v. United Air Lines, Inc.,* — U.S. ——, 119 S.Ct. 2139, 2145, 2150, —— L.Ed.2d —— (1999) (assuming without deciding that EEOC regulations defining disability under ADA are valid, but noting that EEOC has not been given authority to issue regulations defining disability under ADA). The evidence concerning the continuing effects of the injuries to plaintiff's lower back and right leg indicates that they constitute physical impairments under this definition.

### 2. Major Life Activities

■ "The second step in the analysis is to identify the life activities affected by the impairment, and to determine whether those activities are 'major' life activities under the ADA. *Bragdon,* 524 U.S. 624, 118 S.Ct. at 2202." *Colwell,* 158 F.3d at 642. Plaintiff claims that his impairments have substantially limited the activities of sitting, standing, walking, carrying, bending, working, running, jumping, climbing ladders, engaging in sports, and driving.[6] In addition, Dr. Shine's report and the testimony of plaintiff and Dr. Luchini suggest that plaintiff's impairments affected the activities of lifting, climbing stairs, and crawling. Though plaintiff has not explicitly relied upon these latter activities, the court considers them as well.

**6.** During the pretrial conference on April 13, 1999, plaintiff indicated that he would rely on a "laundry list" of activities, including walking, sitting, standing, driving, and engaging in sports. (Transcript for April 13, 1999, pp. 7–10.) Plaintiff also indicated at that time that he would rely on the activities of sleeping and yard work. (*Id.*) However, plaintiff offered no evidence on these latter activities, and made no reference to them during the extensive colloquy with the court concerning defendants' motion for judgment as a matter of law. (*See* Transcript for April 19, 1999, pp. 3–52.) Accordingly the court considers any claim based on sleeping and yard work to be abandoned.

The Second Circuit has recognized that walking and working are major life activities, *see Colwell,* 158 F.3d at 642, and has assumed, without deciding, that sitting, standing, lifting, and bending also are major life activities. *See Colwell,* 158 F.3d at 642; *see also Ryan v. Grae & Rybicki,* 135 F.3d 867, 870 (2d Cir.1998). On the other hand, the Second Circuit has concluded that driving and sports activities do not constitute major life activities. *See Colwell,* 158 F.3d at 642.

That leaves carrying, running, jumping, climbing stairs and ladders, and crawling. The court assumes without deciding that carrying is a major life activity. However, it concludes that running, jumping, climbing stairs and ladders, and crawling are not major life activities within the meaning of the ADA. The court is guided by "[t]he plain meaning of the word 'major[,' which] denotes comparative importance and suggest[s] that the touchstone for determining an activity's inclusion under the statutory rubric is its significance." *Bragdon,* 524 U.S. 624, 118 S.Ct. at 2205; *see Colwell,* 158 F.3d at 642. Running, jumping, climbing stairs and ladders, and crawling simply are not sufficiently significant or essential functions to qualify as major life activities under the ADA. *Compare* 29 C.F.R. § 1630.2(h)(2)(i) ("functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working" constitute major life activities under the ADA); *see Robinson v. Global Marine Drilling Co.,*

During the colloquy with the court concerning defendants' motion for judgment as a matter of law, plaintiff further claimed that he was substantially limited, or regarded as substantially limited, with respect to working (Transcript for April 19, 1999, p. 25), running, jumping, carrying, climbing ladders, bending and stooping. (*Id.* at 32.) The court considers the activity of stooping under the rubric of "bending." *See Merriam Webster's Collegiate Dictionary* 1159 (10th ed.1993) (primary definition of "stoop" is "to bend the body or a part of the body forward and downward").

101 F.3d 35, 37 (5th Cir.1996) (climbing stairs is not a sufficiently "basic, necessary function ... to qualify as a major life activity under the ADA. *Rogers v. Int'l Marine Terminals, Inc.,* 87 F.3d 755, 758 n. 2 (5th Cir.1996)"); *Miller v. Airborne Exp.,* No. 3:98–CV–0217–R, 1999 WL 47242, *4 (N.D.Tex. Jan. 22, 1999) (climbing and crawling are not major life activities); *Butterfield v. New York State,* No. 96Civ.5144(BDP)LMS, 1998 WL 401533, *9 (S.D.N.Y. July 15, 1998) (running is not a major life activity); *Stone v. Entergy Services, Inc.,* Civ. A. No. 94–2669, 1995 WL 368473, *3 (E.D.La. June 20, 1995) (complete inability to run does not constitute a disability under the ADA); *Kriskovic v. Wal–Mart Stores, Inc.,* 948 F.Supp. 1355, 1364–65 (E.D.Wis.1996) (climbing ladders is not a major life activity); *but see id.* (assuming that climbing stairs is a major life activity).

### 3. *Substantial Limitation*

"The third step in the *Bragdon* analysis is to determine whether the plaintiff's impairment 'substantially limits' the life activities that are properly deemed major. This inquiry is individualized and fact-specific. [*Reeves v. Johnson Controls World Services, Inc.,* 140 F.3d 144, 152 (2d Cir. 1998) ]; *Ryan,* 135 F.3d at 872; *see also Bragdon,* 524 U.S. 624, 118 S.Ct. at 2206 ...." *Colwell,* 158 F.3d at 643. "The ADA does not define 'substantially limits,' but 'substantially' suggests 'considerable' or 'specified to a large degree.'" *Sutton,* —— U.S. ——, ——, 119 S.Ct. 2139, 2150, —— L.Ed.2d —— (1999) (citing Webster's Third New International Dictionary 2280 (1976); 17 Oxford English Dictionary 66–67 (2d ed.1989)). Under the EEOC regulations, "substantially limited" is defined as:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular

major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). "The regulations recommend that the following factors be considered in determining whether an individual is substantially limited in a major life activity: '(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.' 29 C.F.R. § 1630(j)(2)."*Colwell,* 158 F.3d at 643 (relying on EEOC regulations in interpreting "substantially limits"); *see also Sutton,* —— U.S. ——, ——, 119 S.Ct. 2139, 2150, —— L.Ed.2d —— (1999) ("[a]ssuming without deciding that ... the EEOC regulations interpreting the term 'substantially limits' are reasonable"); *Albertsons,* —— U.S. ——, —— n. 10, 119 S.Ct. 2162, 2167 n. 10, —— L.Ed.2d —— (1999) (same). The plaintiff has the burden of proving a substantial limitation. *Colwell,* 158 F.3d at 643. Applying this framework, the court concludes that "the evidence was insufficient to support a finding that [plaintiff's] impairments were substantial, particularly in light of the first EEOC factor: 'the nature and severity of the impairment' as compared with the average person's ability to perform those activities. *See* 29 C.F.R. § 1630.2(j)(2)." *Colwell,* 158 F.3d at 643.

■ The court first considers plaintiff's claim that he was substantially limited in the activity of walking. Interpreted in a light most favorable to plaintiff, the evidence regarding plaintiff's ability to walk could suggest that plaintiff had a 20% impairment of his right ankle and 10% impairment of his back; experienced difficulty climbing stairs; had a marked limp; moved slowly; suffered a constant, moderate pain in his right ankle, which occasionally became intense, and which was wors-

ened by walking; periodically wore an air cast; and was able to walk only about half a mile.[7] (Luchini Report dated September 21, 1992, Plaintiff's Exhibit 7; Shine Report, Plaintiff's Exhibit 11; Plaintiff's Testimony; Luchini's Testimony.) Though this evidence suggests that plaintiff may have been moderately restricted in his ability to walk, it does not indicate that he was substantially limited in that regard. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 106 (3d Cir.1996) ("comparatively moderate restrictions on the ability to walk are not disabilities").

Most important, plaintiff's ability to walk a half mile indicates that he was not significantly restricted in his ability to walk "as compared to ... the average person in the general population ...." 29 C.F.R. § 1630.2(j)(1)(ii); *see, e.g., Nedder v. Rivier College*, 944 F.Supp. 111 (D.N.H. 1996) (individual who walked slowly, unstably and with difficulty, but who could walk 500 yards, was not substantially limited in her ability to walk); *see also* 29 C.F.R. Pt. 1630, App. § 1630.2(j) ("an individual who, because of an impairment, *can only walk for very brief periods of time* would be substantially limited in the major life activity of walking" (emphasis added)). That he might have had to wear an air cast to walk that far is immaterial, because "disability under the Act is to be determined with reference to corrective measures ...." *Sutton*, —— U.S. ——, ——, 119 S.Ct. 2139, 2149, —— L.Ed.2d —— (1999); *see also Murphy v. United Parcel Service, Inc.*, —— U.S. ——, 119 S.Ct. 2133, 2136, —— L.Ed.2d —— (1999). In addition, even if the 20% limitation in his leg and the 10% limitation in his back are aggregated and translated directly into a 30% limitation on his ability to walk, that degree of limitation does not rise to the

requisite level of substantiality to qualify as a disability under the ADA. Finally, even in conjunction with the other evidence regarding his ability to walk, plaintiff's evidence of pain, his vague assertions of slowness and difficulty ascending stairs, and the fact that he limped do not constitute "sufficient evidence from which a factfinder reasonably could conclude that the nature and severity of his injury significantly restricted his ability to walk as compared with an average person in the general population." *Kelly*, 94 F.3d at 105 (plaintiff with severe post-traumatic hip impairment who could not walk more than a mile, could not jog, had to use a hand rail and pace himself when ascending stairs, and, according to his doctor, had "great difficulty walking around" was not substantially limited in his ability to walk); *see also Penny v. United Parcel Service*, 128 F.3d 408, 416 (6th Cir.1997) (plaintiff with 14% total body impairment who experienced difficulty walking was not disabled under the ADA); *Richardson v. William Powell Co.*, No. C–1–93–528, 1994 WL 760695 (S.D.Ohio Nov. 10, 1994) (degenerative arthritis that caused a noticeable limp and difficulty climbing stairs was not a disability under the ADA); *Stone*, 1995 WL 368473 (E.D.La.1995) (plaintiff with residual partial paralysis from polio, muscle weakness, one leg shorter than the other, a total body impairment of 15%, difficulty climbing and descending stairs and a walking pace significantly slower than the average person was not disabled under the ADA); *Penchishen v. Stroh Brewery Co.*, 932 F.Supp. 671 (E.D.Pa. 1996) (victim of auto accident who could walk at only one-half her normal speed and had to climb stairs by placing both feet onto each step before reaching for the next was not substantially limited in activity of walking); *Graver v. National Eng'g Co.*, No. 94–C–1228, 1995 WL 443944

---

**7.** The Shine report also states that plaintiff could not walk for "prolonged distances," and Dr. Luchini, similarly, testified that plaintiff was unable to walk "for long distances." These statements are too vague to support an inference that plaintiff was substantially limited in his ability to walk. *See Colwell*, 158 F.3d at 644 (descriptions of plaintiffs' limitations too vague to support finding of substantial limitation).

(N.D.Ill. July 25, 1995) (plaintiff who walked slowly and with marked limp, experienced substantial pain while walking, and could not walk on grass or non-level surfaces was not disabled under the ADA); *Hazeldine v. Beverage Media, Ltd.*, 954 F.Supp. 697, 703–04 (S.D.N.Y.1997) (obese individual who had to rest after walking five city blocks was not disabled under the ADA); and *Rogers v. International Marine Terminals, Inc.*, Civ. A. No. 94–0056, 1995 WL 16787 (E.D.La. Jan. 17, 1995), *aff'd*, 87 F.3d 755 (5th Cir.1996) (plaintiff who suffered from bone spurs, ligament damage, and gout in the right ankle, and had total body impairment of 13% was not substantially limited in his ability to stand and walk).

■ The court next considers plaintiff's claim that he was substantially limited in his ability to sit. The only relevant evidence on this point is plaintiff's testimony that when he returned to work, he could not sit for "long periods of time," sometimes not longer than fifteen or twenty minutes, at other times not longer than two hours. This description of his limitation is too vague to establish a substantial limitation. *See Colwell*, 158 F.3d at 639, 644 (plaintiff's vague assertions that he could not "sit 'too long,' and [that] 'prolonged' sitting is a problem at work" and that he could not take " 'a two or three or four hour drive' without stopping to stretch his legs" were insufficient to allow the jury reasonably to conclude that his impairment substantially limited his ability to sit); *see also Helfter v. United Parcel Service, Inc.*, 115 F.3d 613, 616 (8th Cir. 1997) (plaintiff's statement that she was unable to sit for longer than 30 minutes was insufficient to establish disability under the ADA); *Horth v. General Dynamics Land Systems, Inc.*, 960 F.Supp. 873, 878 (M.D.Pa.1997) (inability to sit more than two hours did not constitute substantial limitation on major life activity of sitting); *Kirkendall v. United Parcel Service, Inc.*, 964 F.Supp. 106, 111 (W.D.N.Y.1997) (plaintiff's "inability to sit for more than 3 hours at a time … does not constitute a disability within the meaning of the ADA"); *compare Meling v. St. Francis College*, 3 F.Supp.2d 267, 273 (E.D.N.Y. 1998) (plaintiff who could not sit longer than 15 minutes was substantially limited with respect to sitting).

■ As to the activity of standing, plaintiff has presented only the similarly vague testimony of Dr. Luchini, who stated that plaintiff was limited in his ability to endure "prolonged standing." This testimony is also too ambiguous to support a finding of substantial limitation. *See Colwell*, 158 F.3d at 644 (testimony that plaintiffs could not stand for "long periods of time," stand " 'at attention' for 'any period of time,' " or stand "in one spot" was too vague to establish significant restriction on activity of standing).

■ In support of his claim that he is substantially limited with regard to carrying, plaintiff has offered only Dr. Shine's statement in his report to the New Haven Workers' Compensation Division that plaintiff would have difficulty "carrying heavy loads …." (Shine Report, Plaintiff's Exhibit 11.) This statement is too vague to support a finding that plaintiff is significantly restricted in his ability to carry compared to the average person. *See Colwell*, 158 F.3d at 644 (testimony that plaintiff could not lift "very heavy objects" did not support a finding of substantial limitation).

■ As far as lifting is concerned, plaintiff's evidence consists of Dr. Shine's statement that plaintiff could not lift more than fifteen pounds. (Shine Report, Plaintiff's Exhibit 11.) That statement, which was recorded when Shine examined plaintiff in August 1992, more than a year before Pastore appointed White to the Superintendent's position, reflects Shine's impression of plaintiff's condition at the time of the examination. The language used by Shine is carefully qualified to avoid any suggestion that the fifteen pound lifting

restriction might be permanent.[8] Because the statement indicates that plaintiff could lift up to fifteen pounds, and because it lacks any indication that the fifteen pound limitation was permanent, it cannot support a finding of a substantial limitation within the meaning of the ADA. *See Colwell*, 158 F.3d at 644 (evidence that plaintiff could lift only light objects of 10 to 20 pounds at infrequent intervals was not sufficient to establish that plaintiff suffered a substantial limitation on his ability to lift); *Helfter*, 115 F.3d at 617 (medical evidence that plaintiff could not lift more than 10 pounds frequently or 20 pounds occasionally did not raise genuine issue of material fact on whether her impairments imposed substantial limitations on major life activities other than working); *Snow v. Ridgeview Medical Center*, 128 F.3d 1201, 1207 (8th Cir.1997) (evidence of physician's imposition of a lifting restriction, without more, is insufficient to establish a significant restriction on the ability to lift under the ADA); *Aucutt v. Six Flags Over Mid–America, Inc.*, 85 F.3d 1311, 1319 (8th Cir.1996) (25 pound lifting restriction did not significantly restrict major life activities); *Wooten v. Farmland Foods*, 58 F.3d 382, 384–85 (8th Cir.1995) (10–20 pound weight restriction did not constitute a substantial limitation on any major life activity); *Williams v. Channel Master Satellite Systems, Inc.*, 101 F.3d 346, 349 (4th Cir. 1996) (holding as a matter of law that 25 pound restriction on lifting does not constitute a substantial limitation on any major life activity); *Halperin v. Abacus Technology Corp.*, 128 F.3d 191, 200 (4th Cir.1997) (upholding summary judgment for defendant on ADA claim premised on a temporary 20 pound lifting restriction); *Thompson v. Holy Family Hosp.*, 121 F.3d 537, 539–40 (9th Cir.1997) (inability to lift more than 25 pounds frequently, more than 50 pounds twice a day or more than 100 pounds once a day does not constitute a substantial limitation on any major life activity); *Testerman v. Chrysler Corporation*, Civ. A. 95–240, 1997 WL 820934, *11 (D.Del. Dec. 30, 1997) (inability to lift more than 20 pounds did not constitute a substantial limitation on the major life activity of lifting); *Horth*, 960 F.Supp. at 878 (inability to continually lift objects over 20 pounds did not amount to a substantial limitation on the major life activity of lifting); *Hazeldine*, 954 F.Supp. at 703 (allegation that plaintiff was unable to lift or carry objects weighing more than 10 pounds was insufficient to support conclusion that she was substantially limited in a major life activity); *Kirkendall*, 964 F.Supp. at 111 (30 pound lifting restriction was not substantial limitation on any major life activity); *cf. Howard v. Navistar*, 904 F.Supp. 922, 928 (E.D.Wis.1995) (15 pound weight restriction did not constitute substantial limitation on ability to work); *Kriskovic*, 948 F.Supp. at 1363–65 (impairment causing inability to push, pull or lift more than 25 pounds did not significantly limit individual's ability to work); *Khan v. Cook County*, No. 96 C 1113, 1997 WL 370199 (N.D.Ill. June 27, 1997) (employee unable to lift more than 15 pounds was not substantially limited in major life activity of performing manual tasks); *but see Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170 (10th Cir.1996) (evidence that individual could lift no more than 15 pounds and should not often lift less than that raised issue of fact as to whether she was disabled under ADA); *Haysman v. Food Lion, Inc.*, 893 F.Supp. 1092 (S.D.Ga.1995) (evidence that plaintiff was limited to lifting 10–15 pounds raised issue of fact as to disability); *Whitfield v. Pathmark Stores, Inc.*, 39 F.Supp.2d 434 (D.Del.1999) (jury could reasonably conclude that inability to

---

**8.** Dr. Shine wrote: *"Impression and Suggestion. . . . at the present time* I would estimate that he has a [12.5]% impairment of his right ankle and a 5% impairment of his lumbar spine function .... I would believe the patient *at this time* should be able to return to some light selected work which would have to be primarily sedentary office type of work with limited physical activity. *He cannot lift more than 15 lbs . . . . . "* (Shine Report, Plaintiff's Exhibit 11 (emphasis added).)

lift more than 20 pounds constitutes substantial limitation on ability to lift); *Frix v. Florida Tile Industries, Inc.*, 970 F.Supp. 1027, 1033–34 (N.D.Ga.1997) (25 pound lifting limitation, in conjunction with limitations on bending and stooping, constituted disability because it prevented plaintiff from performing an entire class of jobs). The fact that plaintiff himself failed to mention during his testimony any restriction or difficulty with respect to lifting bolsters this conclusion.

■ Next the court considers the evidence concerning limitations on plaintiff's ability to bend. The evidence in this regard consists of Dr. Luchini's statement that plaintiff "can't do bending" (Luchini's Testimony); his statement that plaintiff "has some limitation of motion with forward bending and side to side" (Luchini Report dated September 21, 1992, Plaintiff's Exhibit 11); Dr. Shine's statement that "at least for the foreseeable future it is unlikely that [plaintiff] would be able to return to the normal activities of a policeman which would require ... bending" (Shine Report, Plaintiff's Exhibit 11); and Shine's statement that plaintiff "was able to bend forward from his waist 80 [degrees], bend back 20 [degrees] and side bend 30 [degrees] to the right and left with some pain at the extremes of motion." (*Id.*) This evidence is insufficient to withstand defendants' motion for judgment as a matter of law.

Though Dr. Luchini's statement that plaintiff "can't do bending" seems superficially to support plaintiff's claim, the awkwardness of the phrasing renders the statement inherently ambiguous and, therefore, unreliable. In addition, the statement was made in a casual and unreflective manner, and was not elaborated upon in any fashion. Most important, to the extent the statement is construed as suggesting that plaintiff has no ability to bend, it is contradicted by Luchini's own prior statement that plaintiff "has *some* limitation of motion with forward bending and side to side." (Luchini Report dated

September 21, 1992, Plaintiff's Exhibit 11 (emphasis added).) In light of these flaws, this evidence would not support a finding by a reasonable jury that plaintiff was substantially limited in his ability to bend. *Cf. Penny*, 128 F.3d at 415–16 (summary judgment appropriate where internal contradiction in statements of doctor rendered his opinion of plaintiff's condition too unreliable to support a jury finding of substantial limitation).

As to Shine's statement that "at least for the foreseeable future it is unlikely that [plaintiff] would be able to return to the normal activities of a policeman which would require ... bending," this statement is also too vague to support a finding of disability under the ADA. *See Colwell*, 158 F.3d at 644. In addition, because the statement "is cast in terms of the demands of police work," it provides "no support for the idea that his impairments would be significantly limiting to 'the average person in the general population,' *see* 29 C.F.R. § 1630.2(j)(1), as opposed to someone expected to perform the prolonged, repetitive, and rigorous demands of a police officer." *Colwell*, 158 F.3d at 644.

Finally as to bending, Shine's specific observation that plaintiff "was able to bend forward from his waist 80 [degrees], bend back 20 [degrees] and side bend 30 [degrees] to the right and left with some pain at the extremes of motion" (Shine Report, Plaintiff's Exhibit 11) suggests that plaintiff was not significantly restricted in his ability to bend compared to the average person. *See Hazeldine*, 954 F.Supp. at 704–705 (obese individual who "cannot kneel or bend and must kick a dropped object close to a chair to enable her to pick it up while sitting" was not disabled under ADA); *Edwards v. Winco Manufacturing Co., Inc.*, 5 F.Supp.2d 743, 745, 751 (E.D.Mo.1998) (physician's certificate imposing bending restriction was insufficient to establish that employee had a disability under ADA); *but see Whitfield*, 39 F.Supp.2d at 438–40 (jury could reasonably conclude that inability to bend repeti-

tively constitutes substantial limitation on ability to bend).[9]

▉ Plaintiff's last claim under prong (A) of 42 U.S.C. § 12102(2) is that his impairments substantially limited his ability to work. *See* 29 C.F.R. Pt. 1630, App. § 1630.2(j) (limitations on an individual's ability to work should be considered only "[i]f [the] individual is not substantially limited with respect to any other major life activity"). To prevail on such a claim, a plaintiff must show that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i); *see also Colwell*, 158 F.3d at 643 (relying on 29 C.F.R. § 1630.2(j)(3)(i) in considering limitations on plaintiff's ability to work); *Sutton*, —— U.S. ——, ——, 119 S.Ct. 2139, 2149, —— L.Ed.2d —— (1999) (assuming without deciding that this regulation is valid). Toward this end, a plaintiff must present "specific evidence about 'the kinds of jobs from which [he] is disqualified' .... *See* [*Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir.1994).]" *Colwell*, 158 F.3d at 645.

Plaintiff has failed to meet this burden. He has presented no evidence whatsoever concerning the kinds of jobs from which he is disqualified. Moreover, his evidence of restrictions would not in any event support a rational conclusion that he was unable to perform the requirements of even a single job, let alone a class or a broad range of jobs. Interpreted most favorably to plaintiff, the evidence shows that his impairments restricted him to light duties in his position as a detective during a period that ended more than three months before the adverse employment action of which he complains. (*See* Dr. Luchini's Return to Work Slip dated May 11, 1993, Defendant's Exhibit 2.) "This evidence is insufficient to show that [plaintiff] was 'signifi-

cantly restricted' in his ability to work at a class or broad range of jobs." *Colwell*, 158 F.3d at 645; *see also Heilweil*, 32 F.3d at 723 ("an impairment that disqualifies a person from only a narrow range of jobs is not a substantially limiting one"). Accordingly, the court concludes that plaintiff cannot establish that he has a disability under prong (A) of 42 U.S.C. § 12102(2).

**B.** *§ 12102(2)(C)*

▉ Plaintiff also argues that he had a disability under prong (C) of 42 U.S.C. § 12102(2) because he was "regarded as" having an impairment that substantially limited a major life activity. "Whether an individual is 'regarded as' having a disability 'turns on the employer's perception of the employee' ...." *Colwell*, 158 F.3d at 646 (quoting *Francis*, 129 F.3d at 284); *see also Sutton*, —— U.S. ——, ——, 119 S.Ct. 2139, 2149, —— L.Ed.2d —— (1999) ("it is necessary that a covered entity entertain misperceptions about the individual.... [Such] misperceptions often resul[t] from stereotypic assumptions not truly indicative of individual ability" (internal quotation marks omitted)). "[T]he plaintiff must show that the employer regarded the individual as disabled within the meaning of the ADA." *Colwell*, 158 F.3d at 646. Thus, "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate ... that the employer regarded the employee as disabled .... Plaintiff must show that defendants perceived his impairment as substantially limiting the exercise of a major life activity." *Reeves*, 140 F.3d at 153; *see also Sutton*, —— U.S. ——, ——, 119 S.Ct. 2139, 2149, —— L.Ed.2d —— (1999); *Murphy*, —— U.S. ——, ——, 119 S.Ct. 2133, 2137, —— L.Ed.2d —— (1999). Plaintiff has failed to meet this burden.

---

**9.** Once again, the court's conclusion is bolstered by the fact that plaintiff made no mention during his testimony of any difficulty associated with bending.

Plaintiff's claim that he was regarded as disabled relies largely on the same evidence he offers to support his claim under § 12102(2)(A), namely, Dr. Shine's report and the Luchini report of September 21, 1992. He claims that defendants regarded him as disabled because they viewed him as he was portrayed in those reports. Defendants argue with some force that the views expressed in the reports should not be imputed to them.[10] However, even assuming that the doctors' views were known to and shared by the defendants, their views no more evince a perception of plaintiff as substantially limited in some major life activity than they evince actual, substantial limitations. Thus, the doctors' reports are no more helpful to plaintiff under § 12102(2)(C) than under § 12102(2)(A).[11]

In addition to the Shine report and the Luchini report of September 21, 1992, plaintiff's claim under § 12102(2)(C) relies on: Chief Pastore's written response to Luchini's September 21, 1992 certification that plaintiff was ready to return to light duty work, in which Pastore asks when plaintiff will be prepared to return to " 'regular' full duty" (Plaintiff's Exhibit 8);

Pastore's response to plaintiff's inquiry about the appointment process in February 1993, when he allegedly stated, "You're injured," and walked away; the fact that plaintiff was on a light duty assignment from the time of his return to work through the appointment of White; and the fact that plaintiff was not appointed to the Superintendent of Motor Vehicles position despite his first place ranking on the civil service examination. These additional pieces of evidence do not provide a basis for a rational juror to find that defendants regarded plaintiff as substantially limited in some major life activity.

Pastore's written inquiry in response to Luchini's release of plaintiff to light duty merely establishes that the person who made the adverse employment decision was aware of plaintiff's impairment. It sheds no light on the key issue of defendants' perception of the nature and extent of plaintiff's limitations. *See Colwell,* 158 F.3d at 646 ("[i]t is not enough ... that the employer regarded [plaintiff] as somehow disabled; rather, the plaintiff must show that the employer regarded the individual as disabled within the meaning of the ADA").[12]

10. Plaintiff argues that the perceptions of him expressed in the Shine report should be attributed to the defendant City of New Haven because the report was the product of an examination commissioned by the City in connection with plaintiff's workers' compensation claim, and he claims that Dr. Luchini's views expressed in his September 21, 1992 report are properly attributed to the City because that report was sent to the City's Workers Compensation Division. Defendants argue that the views expressed in these reports should not be considered in connection with plaintiff's claim that he was regarded as disabled because there is no evidence that the person who made the adverse employment decision, Pastore, read these reports. Moreover, defendants assert that, even if Pastore did read the reports, there is no ground to believe that he viewed plaintiff as disabled when White was appointed more than one year later. Defendants emphasize that the reports purported to describe plaintiff's condition at the time the reports were issued, and that subsequent communications from Dr. Luchini, including his May 11, 1993 release of

plaintiff to regular work duties, obviated the earlier reports.

11. Similarly, plaintiff's testimony concerning the limitations he suffered when he returned to his job do not help plaintiff to establish that he was regarded as disabled within the meaning of the ADA. First, plaintiff has presented no evidence, or argument, that Pastore actually witnessed any of the symptoms of the physical limitations described by plaintiff in his testimony. Moreover, even if the court assumes that Pastore did witness the symptoms described by plaintiff, there would still be no basis for concluding that defendants perceived of plaintiff as suffering from any substantial limitations on a major life activity. At most, the assumption would provide the basis for an inference that defendants regarded plaintiff as limited to the extent his testimony suggested he actually was limited. As noted in the analysis under § 12102(2)(A) above, that testimony falls short of establishing that he actually was limited to a substantial degree.

Similarly, the fact that plaintiff was assigned to a light duty position is of no avail. The Second Circuit has instructed that "[a]ssignment to light duty status ... does not support the inference that the [employer] viewed [plaintiff] as disabled ...." *Colwell,* 158 F.3d at 647. It is particularly appropriate to apply this general rule here because plaintiff has provided no evidence detailing the restrictions associated with his light duty assignment; the light duty assignment was not imposed involuntarily, but rather was granted as an accommodation in response to a request made by plaintiff's doctor;[13] and plaintiff was placed in a regular duty position only a month after he was denied the appointment he sought.

Finally, Pastore's alleged remark in February 1993 and the fact that plaintiff was not appointed to the Superintendent's position cannot support an inference that plaintiff was regarded as disabled with respect to any major life activity. These pieces of evidence are arguably relevant to plaintiff's claim that he was regarded as disabled with respect to the major life activity of working because, viewed in a light most favorable to plaintiff, they might suggest that Pastore considered plaintiff incapable of working as the Superintendent of Motor Vehicles due to his impairment. However, even when so viewed, Pastore's comment and the nonappointment do not satisfy plaintiff's "burden of presenting evidence that [defendants] perceived [him] to be incapable of working in a *broad range of jobs* suitable for a person of [his] age, experience, and training because of his disability." *Ryan,* 135 F.3d at 872 (emphasis added); *see also Murphy,* —— U.S. ——, ——, 119 S.Ct. 2133, 2138, —— L.Ed.2d —— (1999) ("[P]etitioner is, at most, regarded as unable to perform only a particular job. This is insufficient, as a matter of law, to prove that petitioner is regarded as substantially limited in the major life activity of working."). Moreover, the comment and the nonappointment provide no insight into defendants' views regarding the nature and scope of the limitations imposed by plaintiff's impairments on any other major life activity.[14]

12. Moreover, although it is unclear whether the content of Luchini's reports should be imputed to defendants in connection with plaintiff's claim that he was regarded as disabled, it is noteworthy that Luchini's November 23, 1992 report, which he characterized as his response to Pastore's inquiry, stated that plaintiff would probably be able to return to regular duty some time in the future. (Plaintiff's Exhibit 15; Luchini's Testimony.)

13. As the Second Circuit has explained, an employer that sensibly seeks to avoid litigation, liability and confrontation by "acced[ing] to minor and potentially debatable accommodations" cannot be held to have thereby stipulated to the employee's status as an individual with a disability under the ADA. *Id.* at 646. "Otherwise costless accommodations to physical complaints—here, the plaintiff's fellow officers, not the [municipal employer], paid the price in terms of reduced flexibility in assignments—would entail large future costs, would discourage the employment of persons with minor limitations, and would promote litigation without assisting persons entitled to protection of the ADA." *Id.*

14. Pastore's comment and the fact that plaintiff was not appointed to the Superintendent's position despite his first place performance on the examination might suggest that defendants discriminated against plaintiff in the appointment decision on the basis of his physical limitations. However, the court need not reach the question of whether plaintiff suffered discrimination because he has not established that he was regarded as, or that he actually was, substantially limited in some major life activity. As the Seventh Circuit has stated, "[t]he Act is not a general protection of medically afflicted persons.... [I]f the employer discriminates against [the employee] on account of being (or being believed by [the employer] to be) ill, even permanently ill, but not disabled, there is no violation." *Harrington v. Rice Lake Weighing Systems, Inc.,* 122 F.3d 456, 460 (7th Cir.1997) (quoting *Christian v. St. Anthony Medical Center, Inc.,* 117 F.3d 1051, 1053 (7th Cir.1997)); *see also Colwell,* 158 F.3d at 647 ("[i]n order to be eligible to prevail upon a further showing of discrimination, a plaintiff must" establish that he has a disability within the meaning of the statute).

 

### III. CONCLUSION

Plaintiff has presented insufficient evidence to allow a reasonable juror to conclude either that he was substantially limited with respect to a major life activity or that he was regarded as substantially limited in a major life activity. Therefore, he has failed to establish that he was an individual with a disability under either 42 U.S.C. § 12102(2)(A) or 42 U.S.C. § 12102(2)(C).

Accordingly, defendants' motion for judgment as a matter of law is hereby granted. So ordered.